UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA )
) No. 2:08-CR-94
V. )
)
JOHNNY RAY LOPEZ, SR. )

**REPORT AND RECOMMENDATION**

On January 4, 2008, officers of the Johnson City Police Department entered the apartment at 400 Hamilton Street in Johnson City, without a warrant and without permission of any resident of that address. After entering, the officers arrested defendant. After searching him incident to that arrest, they found a .32 caliber handgun in his pants' pocket. Since he was a convicted felon, the discovery of that weapon forms the basis of Count 4 of the indictment. Defendant has filed a motion to suppress any evidence of the handgun, Doc. 13, arguing that the police (1) unlawfully entered his residence, (2) had no probable cause to arrest him, and (3) therefore had no constitutional basis to search his person. An evidentiary hearing was held on January 23, 2009. This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on February 17, 2009.

On January 4, 2008, at around 8:00 p.m. or shortly thereafter, Washington County 911 received a call from an unnamed female that there was a "disturbance" at 400 Hamilton Street in Johnson City, Tennessee, involving Johnny Lopez, Sr., who reportedly was armed.

Officers responded to that area, looking and listening for anything that might constitute a disturbance. Hearing and seeing nothing, the officers left.

At 8:40 p.m., 911 received a second call from the anonymous female; on this occasion the caller reported that a domestic assault was taking place at 400 Hamilton Street. The caller reported that Judy Lopez had told her (i.e., the female caller) that she had been beaten by her husband, Johnny Ray Lopez, Sr.; that Judy Lopez had to sneak away from Lopez in order to communicate with the caller; that Johnny Lopez, Sr. was still in the residence, that he was on drugs, and that he had a loaded weapon.

Inasmuch as this was the second call of a domestic disturbance at 400 Hamilton Street, and in light of the information that the alleged assailant was still in the residence and armed with a gun, six police officers, including a police captain, responded.

Officer David Hilton knocked on the door for several minutes, with no response. Finally, a woman within the apartment asked through the closed door, "Who's there?" Officer Hilton responded, "Johnson City Police." There was no further response from inside the apartment, and the door was not opened. As Officer Hilton was knocking on the door, Officer Lewis stood on the tire of a car parked in the driveway in order to look through a window into the apartment. From that vantage, Officer Lewis saw a woman, later learned to be Judy Lopez, and the motionless legs of a person either sitting or lying on a couch.

Knowing that Johnny Lopez' daughter, June Little, lived across the street, Captain Turner went to her residence in an effort to obtain some information about what had happened. Ms. Little told him that Johnny and Judy Lopez had been fighting that day, and

2

that she had seen her father strike Judy. She declined to sign a written statement. Thereafter, Captain Turner returned to Lopez' residence, and he told Sergeant Jenkins that he believed an assault had occurred. Shortly thereafter, Judy Lopez came out of the apartment and into the yard. She did not invite the officers into the residence.

The officers observed evidence of trauma to Mrs. Lopez' lip and behind her right ear, and they took photographs of the injuries. The injuries were red and fresh. When asked to explain how she got hurt, Ms. Lopez was evasive, saying that she "might" have fallen.

Based upon the report from 911; the report of a disturbance at this same address earlier in the day; the statement of June Little that her father and Ms. Lopez had been fighting that day; and the injury to Ms. Lopez' head which she refused to explain, the police decided to enter the apartment to confront Mr. Lopez, notwithstanding that Judy Lopez had refused to implicate Mr. Lopez in an assault upon her, and notwithstanding she refused to grant the officers permission to enter the residence. Obviously, the officers did not obtain a warrant. Because the officers knew Mr. Lopez had a criminal history and was involved in drug activity, and because of the report he was armed, they used a ballistic shield when they entered.

After entering, the officers found Mr. Lopez unconscious.[1] After awakening him, they arrested him for domestic assault. They immediately searched his person and discovered a .32 caliber handgun.

---

[1] He "slept" through the officer's knocking on the door; the 911 caller's report that he was on drugs undoubtedly was correct.

3

## WAS THE OFFICERS' WARRANTLESS AND NON-CONSENSUAL ENTRY INTO THE APARTMENT A VIOLATION OF THE FOURTH AMENDMENT?

Defense counsel stresses that Judy Lopez, the victim of the assault, refused to implicate Johnny Lopez, Sr. in any assault upon her, and she likewise did not admit the officers to her residence. The logical conclusion to defendant's argument in this regard is that, if all circumstances suggest that more likely than not an individual has been the victim of domestic assault perpetrated by a known individual, the police are powerless to act if the victim refuses to explicitly accuse the attacker. That, respectfully, is not the law. In fact, the law is quite the opposite: Tenn. Code Ann. § 36-3-619 provides:

> (a) If a law enforcement officer has probable cause to believe that a person has committed a crime involving domestic abuse, whether the crime is a misdemeanor or felony, or was committed within *or without* the presence of the officer, the preferred response of the officer is arrest. [Italics supplied].

Officer Hilton testified that he deals with domestic violence cases almost on a daily basis, and it is not uncommon for a victim of domestic violence to refuse to implicate an attacker. For whatever it is worth, this magistrate judge was confronted on numerous occasions throughout his tenure as a state trial judge, trying domestic cases, with the same unfortunate phenomenon; notwithstanding that a host of people witnessed a domestic assault, it was not unknown for the victim to deny that an assault had occurred or, alternatively, to attempt to take the blame for the assault that was visited upon her. To put it succinctly, the officers are not bound to deny or ignore what they see and know merely because the victim refuses to implicate her attacker. As discussed above, the law imposes upon the officers an

4

affirmative duty to act.

The Johnson City Police had received not one, but two, calls from an anonymous caller involving Johnny Lopez, Sr., the latter of which indicated that Mr. Lopez was assaulting his wife, that he was on drugs, and that he was armed. Johnny Lopez' daughter, June Little, confirmed that defendant and Judy Lopez had been at her residence earlier, and that she had seen defendant strike Judy Lopez. Defendant attempts to make much of the fact that June Little refused to give a written statement, but that is utterly inconsequential; the fact remains that June Little told the officers that she had witnessed her father assault Judy Lopez, and the officers were bound to act upon that information with or without a written confirmation from June Little.

Along with all the foregoing information, there is yet one additional fact that needs to be taken into account - Officer Lewis' observation of someone's unmoving legs in the living room. For all the officers knew, that individual could have been injured or dead, not an unreasonable fear when considered in light of all the other facts then known to the officers.

Defendant argues that there were no "exigent circumstances" justifying a warrantless entry into the premises. Again, the court disagrees. One can only imagine the howls of criticism that would have arisen had these officers simply walked away, and had Mrs. Lopez walked back into the house and thereafter been killed. After all, the police could not have excluded the possibility that defendant had observed the police officers talking to his wife in the front yard and, after their departure, that he would have vented his drug-fueled rage

5

on Mrs. Lopez.

There were two exigent circumstances justifying an immediate and warrantless entry into this residence. First, there was the need to investigate the status of the individual attached to the "motionless legs" on the couch; beyond any reasonable argument, violence had occurred on at least two occasions within the past hour, and a firearm was potentially involved in both instances. Second, Mrs. Lopez was the obvious victim of a physical domestic assault, and the police had information from two sources, the 911 caller and defendant's daughter, that defendant was the assailant. Based upon the officers' experience with domestic assault, taking immediate steps to quell the possibility of future violence, perhaps even deadly violence, was reasonable under the Fourth Amendment:

> No question has been raised or reasonably could be about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort [of trespass] by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur . . . .

*Georgia v. Randolph*, 547 U.S. 103, 118 (2006).

### *DID THE OFFICERS LAWFULLY SEARCH DEFENDANT'S PERSON?*

If there was probable cause to make an arrest, then this was a search incident to a valid arrest. *United States v. Robinson*, 414 U.S. 218 (1973).

### *RECOMMENDATION*

For the foregoing reasons, it is respectfully recommended that the defendant's motion

to suppress (Doc. 13), be DENIED.[2]

Respectfully submitted,

                 s/ Dennis H. Inman
                 United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

7