UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 2:08-CR-94 |
| V. | ) | |
| | ) | |
| JOHNNY RAY LOPEZ, SR. | ) | |

**MEMORANDUM OPINION**

This criminal matter is before the Court to consider the Report and Recommendation of the United States Magistrate Judge dated February 19, 2009. [Doc. 30]. In that Report and Recommendation, the Magistrate Judge recommends that the defendant's motion to suppress be denied. An evidentiary hearing was held by the Magistrate Judge on February 17, 2009, and the transcript of the February 17 hearing has been filed. [Doc.32]. The defendant has filed objections to the Report and Recommendation, [Doc. 31], and the Court heard oral argument on the objections on March 31, 2009.

The defendant filed a motion to suppress any evidence of the handgun which was in his possession when the police entered his home on January 4, 2008, arguing that the police (1) had no probable cause to arrest him, (2) unlawfully entered his residence, and (3) therefore had no constitutional basis to search his person. [Doc. 13]. The United States responded that there was no violation of the Fourth Amendment due to exigent circumstances that were present in the domestic situation, that probable cause existed for the arrest, and the search that revealed the handgun was incident to a lawful arrest.

**FINDINGS OF FACT**

On January 4, 2008, at approximately 8:08 p.m., Washington County 911 received a call from an unidentified female caller about an unknown disturbance in the 400 block of Hamilton Street in Johnson City, Tennessee. (See Exhibit No. 4 to the hearing on February 17, 2009). At approximately 8:10 p.m. Officer David Hilton with the Johnson City Police Department received a dispatch about the unknown disturbance at the corner of Hamilton and Winter Streets. When he went to that area, he got out of his squad car but he did not hear anything or notice anything peculiar.

At approximately 8:42 p.m. on that same night, dispatch received a second call from the same anonymous female reporting that Judy Lopez had been assaulted or beaten by Johnny Ray Lopez, that he had a loaded weapon, and that there was possibly drug activity at 400 Hamilton Street. However, the unnamed female caller stated that Judy Lopez had not reported that the defendant had threatened her with the gun, but she did report that he was on some type of drugs. In that this was the second call of a disturbance at 400 Hamilton Street, and in light of the information that the alleged assailant was still in the residence and armed with a gun, six police officers, including Police Captain Carl Turner, responded between 8:46 and 8:50 p.m.

Officer David Hilton knocked on the door for "maybe a minute," but initially got no response. The officers did not see or hear any scuffling or fighting inside the residence. Finally, a woman inside the apartment asked through the closed door, "Who is it?" Officer Hilton responded, "the Police Department." There was no further response from inside the apartment, and the door was not opened. As Officer Hilton continued knocking on the door, Officer Lewis stood briefly on the tire of a car parked in the driveway of the residence in order to look through a window into the apartment. From that vantage point, Officer Lewis saw a female come into view, and the motionless legs of a person

2

either sitting or lying on a couch.

After Captain Turner was advised that some family members lived across the street, Captain Turner went to the residence of Johnny Lopez' daughter, June Little, in an effort to obtain some information about what had happened. Ms. Little told him that Johnny and Judy Lopez were over at her residence during that day and they were fighting. Ms. Little told the officers that she had seen her father assault Judy Lopez, but she refused to give a written statement. Captain Turner then returned to the Lopez' residence, and he told Sergeant Jenkins that he believed an assault had occurred.

Shortly after that, Judy Lopez came out of the apartment and into the yard. Officer Hilton observed evidence of trauma to Mrs. Lopez' lip and behind her right ear, and photographs were taken of her injuries. Ms. Lopez' injuries appeared to be fresh and they were still red. When asked to explain how she got hurt, Ms. Lopez basically avoided the officers' questions, finally saying that she "may" have fell. Captain Turner then authorized the officers to enter the apartment because he felt they had probable cause to arrest Lopez and because he "had concerns that someone else may have been in the house or that Mr. Lopez may have been injured or there may have been another person injured inside the residence."

When the officers entered the residence, they found Lopez on the couch passed out or unconscious. After awakening him, they arrested him for domestic assault. After searching him incident to that arrest, officers found a .32 caliber handgun in his left pants pocket. Because Lopez is a convicted felon, his possession of that weapon forms the basis of Count 4 of the indictment, which charges him with being a felon in possession of a firearm.

3

**ANALYSIS**

As noted above, the government argues that there was no Fourth Amendment violation in this case because probable cause existed for the arrest of Johnny Ray Lopez, Sr., exigent circumstances justified the officers making a warrantless entry into the house, and the search which then led to the discovery of the firearm in Lopez' pocket was incident to his lawful arrest for domestic assault. Defendant, on the other hand, argues that there was no probable cause for the arrest of Lopez and that exigent circumstances did not exist under the circumstances of this case.

**Probable cause**

Under the Fourth Amendment, any arrest requires probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "[P]robable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1976). Probable cause has been defined by the Sixth Circuit as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The legal standard is whether the facts leading up to an arrest, viewed by an "objectively reasonable police officer," establish probable cause. *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005). "A police officer has probable cause only when he discovers ***reasonably reliable information*** that the suspect has committed a crime." *Parsons v. City of Pontiac*, 530 F.3d 492, 500 (6th Cir. 2008) (emphasis in original). The collective knowledge of all officers may add up to probable cause to arrest. *United States v. Perkins*, 994 F.2d 1184, 1189 (6th Cir.), *cert. denied* 510 U.S. 901 (1993).

4

This Court agrees with the government that probable cause existed for the arrest of Johnny Ray Lopez, Sr. on a charge of domestic assault on January 4, 2008. Washington County 911 had received two calls on January 4 with reports of a disturbance at or near the Lopez residence. The second 911 call specifically reported that Judy Lopez had been assaulted or beaten by Johnny Ray Lopez, Sr., that he had a loaded weapon, and that he was on some type of drugs. In addition, the officers received eyewitness confirmation from Johnny Lopez' daughter, June Little, that Johnny Ray Lopez had assaulted Judy Lopez <u>and</u> the officers saw further confirmation of that by their personal observation of trauma to Judy Lopez' face and head. That Judy Lopez would not confirm the assault or implicate her husband adds little to the equation. As the Magistrate Judge observed, "the officers are not bound to deny or ignore what they see and know merely because the victim refuses to implicate her attacker." These officers clearly had probable cause, based on reasonably reliable information, that Johnny Ray Lopez had committed a crime.

One other subject needs to be addressed briefly. Much has been made of *Tennessee Code Annotated* § 36-3-619, which provides:

> (a) If a law enforcement officer has probable cause to believe that a person has committed a crime involving domestic abuse, whether the crime is a misdemeanor or felony, or was committed within or without the presence of the officer, the preferred response of the officer is arrest.

Frankly, the statute adds little to the Court's analysis. It simply provides that if an officer has probable cause to believe that a domestic assault has been committed, the preferred response of the officer is to arrest the person. The statute does not create probable cause where none otherwise existed. And, while the statute may, as the Magistrate Judge found, "impose upon the officers an affirmative duty" ***to arrest***, it does not authorize a warrantless entry into a home in violation of the

5

Fourth Amendment. See *Denton v. Rievley*, No. 1:07-CV-211, 2008 WL 4899526 (E.D. Tenn. Nov. 12, 2008); *Cannon v. Hamilton County*, No. 1:06-CV-79, 2007 WL 3238959 (E.D. Tenn. Nov. 1, 2007).

**Warrantless entry and exigent circumstances**

Absent exigent circumstances, police officers may not enter an individual's home or lodging to effect a warrantless arrest or search. *Payton v. New York*, 445 U.S. 573, 590 (1980). Indeed, the physical invasion of the home is the "chief evil" against which the Fourth Amendment protects. *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003)) (quoting from *Payton*, 445 U.S. at 585). Unless the government proves otherwise, a warrantless entry by the police into a home is presumptively unreasonable. *Huffman*, 461 F.3d at 782; *United States v. Ogbuh*, 982 F.2d 1000, 1003 (6th Cir. 1993). Because warrantless entries are "presumptively unreasonable," *Payton*, 445 U.S. at 586, the government bears a "heavy burden" of proving that an exigency existed. *Vale v. Louisiana*, 399 U.S. 30 (1970); *Huffman*, 461 F.3d at 789 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984)).

The government can overcome the presumption that a warrantless entry is unreasonable if it proves that "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City v. Stewart*, 547 U.S. 398, 403 (2006) (quoting *Mincey v. Arizona*, 437 U.S. 385 (1978)). The Supreme Court has articulated four situations that may give rise to exigent circumstances: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspects escape; and (4) a risk of danger to the police or others. *Id.* In determining whether exigent circumstances exist, the subjective motivation of the officers is irrelevant so long as the circumstances objectively justify

the action.[1]  *Brigham City*, 547 U.S. at 404.

The Magistrate Judge identified "two exigent circumstances justifying an immediate and warrantless entry into this residence." First of all, the Magistrate Judge found that the domestic assault of Mrs. Lopez justified the officers' immediate and warrantless entry into the house in order to "quell the possibility of future violence," citing *Georgia v. Randolph*, 547 U.S. 103 (2006). The "domestic violence exception" applies when it is necessary for law enforcement officers to enter a home "to protect a resident from domestic violence . . ." *Id*. at 118. Likewise, warrantless entry is

---

[1]     While the subjective motivation of the officers is irrelevant, the Court notes that it appears that the actual motivation of the officers was to arrest Johnny Ray Lopez, Sr. because they believed they had probable cause to do so. The following testimony of Captain Turner from the evidentiary hearing illustrates the point:

> Q.     Okay. Now did you authorize the entry into the home?
>
> A.     Yes, Sir, I did.
>
> Q.     Okay. And at that period of time were you going to place Mr. Lopez under , under arrest at that period of time?
>
> A.     From the information that I had I felt that we had probable cause to arrest Mr. Lopez.
>
> Q.     Okay. Was there any other reason for you to enter the home at that period of time?
>
> A.     Well, I had some concerns about the information that the other officers had given me.
>
> Q.     In regards to what?
>
> A.     That there was someone on the couch who wasn't moving, and so I had concerns that someone else may have been in the house or that Mr. Lopez may have been injured or there may have been another person injured inside the residence.

[Doc. 32, Tr. of Feb. 17, 2009 hearing, pp. 65-66]. Nothing in the record suggests that the officers had any information to support the belief that anyone else was in the house or that anyone in the house might be injured. In addition, no evidence in the record even suggests that the officers searched the residence for other occupants.

7

justified to allow the officers "to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur . . . ." *Id.*

In this case, however, Judy Lopez, the alleged victim, was in no immediate danger at the time the officers entered the residence. In fact, she was safely outside the house with the police officers. As Judge Mattice noted in *Cannon*:

> . . . courts in other jurisdictions have held, almost uniformly, that once a victim of domestic violence is removed from the situation, the exigency required to justify a warrantless entry is also removed. See *Espiet v. State*, 797 So.2d 598, 602-03 (Fla.App.2001) (no exigent circumstances when domestic violence victim was outside of home and offender had barricaded himself inside home and would not come out); *Commonwealth of Pennsylvania v. Wright*, 742 A.2d 661, 665 (Penn.2000) (no exigent circumstances when victim was removed from the situation); *Singer v. Court of Common Pleas*, 879 F.2d 1203, 1206-07(3rd Cir.1989) (no exigent circumstances when victim was removed from home and offender refused to come out. Although there was evidence that offender had guns, there was no evidence he threatened to use them.)

*Cannon*, 207 WL 3238959 at *12. See also *United States v. Black*, 482 F.3d 1035 (9th Cir. 2007) (noting that police were justified in their entry because they feared that the victim could have been inside, badly injured and in need of medical attention); *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) (holding that exigent circumstances did not justify officer's warrantless entry into home where officer responded to domestic violence report and domestic violence victim was out front of the home); *United States v. Davis*, 290 F.3d 1239, 1242 (10th Cir. 2002) (noting that immediate harm was extinguished once husband ordered wife out of the house); *United States v. Donlin*, 982 F.2d 31, 32 (1st Cir. 1992) (victimized individual outside her apartment when police arrived was, for all intense and purposes, within their protective custody).

Under the circumstances presented here, this Court concludes that the officers' warrantless

entry into the Lopez home on January 4 was not justified by the need to protect Mrs. Lopez, the victim of domestic violence. Mrs. Lopez had voluntarily exited the house, she was in no immediate danger, there was no evidence to suggest that anyone else was in the house who could have been threatened by the defendant, and the circumstances here do not suggest that any "real immediate and serious consequences" would have occurred with respect to Mrs. Lopez if the officers were to "postpone [] action to get a warrant." See *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2006). In short, no reason appears in this record why the officers could not have protected Mrs. Lopez while they obtained an arrest warrant for Johnny Ray Lopez, Sr. on a charge of domestic assault.

The more compelling "exigent circumstance" relied upon by the Magistrate Judge, however, is the need for the officers to check on the welfare of the set of "motionless legs" observed by the officers inside the house. The United States Supreme Court has recognized an exigency obviating the requirement for a warrant in situations where there is a need "to assist persons who are seriously injured or threatened with such injury." *Brigham City*, 547 U.S. at 403. The Supreme Court held that "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id*. The courts have consistently considered two dispositive factors in cases which apply this exigency–the potential for injury to the officers or others and the need for swift action. See *Brigham City*, 547 U.S. at 408; *Huffman*, 461 F.3d at 783, 785.

The police officers were confronted in this case with a situation where there had been reports of domestic violence at the Lopez residence or in its immediate vicinity earlier in the day and that Lopez was armed, and they had personally observed a "motionless" set of legs lying on a sofa. On

9

the other hand, there was no report that Lopez had used the firearm or had threatened to do so, the officers had no reports of any injury to Lopez (in fact, all reports indicated that he was the aggressor), Lopez had not threatened the officers and Mrs. Lopez did not report that Lopez was injured or had threatened to do harm to himself.

While the government has heavily stressed reports that the defendant possessed a loaded firearm, possession of the firearm alone will not justify a warrantless entry based upon a "risk of danger" because "risk of danger" exists only where (1) the officers have a reasonable belief that a suspect in the home has a weapon; and (2) the officers can demonstrate that the suspect has a willingness to use the weapon. *United States v. Ponder*, 240 Fed. Appx. 17, 20 (6th Cir. 2007); *Causey v. City of Bay City*, 442 F.3d 524, 529 (6th Cir. 2006). In other words, in those cases which have upheld a warrantless entry based on possession of a firearm, there has also been shown a "willingness to use" the firearm by the defendant. For instance, in *Causey*, the Sixth Circuit held that it was reasonable for officers to enter a residence without a warrant after learning that a gun had been fired on the property. Likewise, in *Dickerson v. McClellan*, 101 F.3d 1151 (1996), the Sixth Circuit upheld a warrantless entry into a home where a neighbor reported that nine gunshots had been fired, the occupant of the house was drunk, and the officer heard the occupant yelling in a threatening tone. In *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992), the Sixth Circuit held that exigent circumstances existed where, in addition to a shots fired report, the police also knew from the suspect's psychologist that the suspect was "suicidal and possibly homicidal" and that he had threatened to kill any responding officer. Those cases are clearly distinguishable from the instant case, however, because these officers possessed no specific information suggesting that the suspect, Lopez, was likely to use the weapon. Lopez had neither displayed the firearm in a threatening or

aggressive manner nor did the officers have any reason to believe that Lopez had a reputation for violence.

The United States also makes much of the use by the police officers of a "ballistic shield." The government suggests that the use of a ballistic shield proves objectively the dangerousness of the situation. The Court respectfully disagrees. Use of a ballistic shield was the prudent course of action regardless of whether they were entering the house with a warrant or making a warrantless entry. Whether an exigent circumstance existed is based on an objective standard, as set forth above, and it is well established that police officers are not free to create exigent circumstances to justify their warrantless searches. *United States v. Campbell*, 261 F.3d 628, 633 (6th Cir. 2001) (citing *United States v. Morgan*, 743 F.2d 1158, 1163 (6th Cir. 1984)). In other words, the fact that police used ordinary and prudent police techniques in entering the residence adds nothing to the objective determination of whether or not exigent circumstances existed in the case.

Although the actions of the police officers are understandable in his case, this Court reluctantly concludes, based upon a review of the totality of the circumstances, that the need to assist persons who were seriously injured or threatened with such injury did not provide an exigency obviating the need for a warrant in this case. Although it had been reported that Lopez was in possession of a loaded firearm, no one had reported that shots had been fired or that Lopez had threatened Mrs. Lopez or anyone else with the firearm. Also, the suggestion that Lopez might have been in need of medical treatment or seriously injured is purely speculative. There was no objective evidence that Lopez had been injured by Mrs. Lopez or that he had injured himself. No immediate danger to the officers was apparent, nor is there anything in the record to suggest that the officers were required to enter the house when they did and that they could not wait for an arrest warrant to

be acquired.

CONCLUSION

After careful and *de novo* consideration of the record as a whole, including the transcript of the evidentiary hearing conducted on February 17, 2009, and the Report and Recommendation of the United States Magistrate Judge, it is hereby **ORDERED** that the defendant's objections to the Report and Recommendation are **SUSTAINED** and the defendant's motion to suppress evidence seized on January 4, 2008, after the warrantless entry into his residence, is **GRANTED**. [Doc. 13].

So Ordered.

ENTER:

                                                    s/J. RONNIE GREER
                                       UNITED STATES DISTRICT JUDGE